NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FRED SANTA MARIA, JR., | : | Civ. No. 15-3243 (KM) (JBC) |
| Plaintiff, | : | |
| | : | OPINION |
| v. | : | |
| CITY OF ELIZABETH (N.J.), et al | : | |
| Defendants | : | |

**KEVIN MCNULTY, U.S.D.J.**

## I. INTRODUCTION

The plaintiff, Fred Santa Maria, Jr., filed a civil rights complaint under 42 U.S.C. § 1983 alleging claims of excessive force, intentional infliction of emotional distress, and the denial of medical treatment. (ECF No. 1.) Currently pending are the motions of defendants Jose Martinez, Raul Delaprida and City of Elizabeth (N.J.) for summary judgment. (ECF Nos. 52–54.) Mr. Santa Maria does not oppose the City of Elizabeth's motion. (*See* Pl.'s Opp'n to Summ. J. Mot. ("Pl. Opp."), ECF No. 55 at 23.) Mr. Santa Maria also does not oppose the portion of defendant Delaprida's motion as it relates to claims arising out of intentional infliction of emotional distress and the denial of medical treatment. (*Id.*) Otherwise, however, Mr. Santa Maria opposes the motions. For the reasons set forth below, the motion of the City of Elizabeth is granted. The motions of Detective Martinez and Detective Delaprida for summary judgment denied as to the claims of excessive use of force, but granted on consent as to the claims of intentional infliction of emotional distress and the denial of medical treatment, to the extent such claims may have been intended.

## BACKGROUND

### A. Procedural Background

In May of 2015, Mr. Santa Maria filed a civil rights complaint alleging misconduct by police officers Jose Martinez and Raul Delaprida, as well as the City of Elizabeth and the Elizabeth Police Department. (ECF No. 1). The complaint alleged that Martinez and Delaprida pulled him out of his car, shoved him violently to the ground and handcuffed him behind his back. (*Id.* at 6–7.) The complaint also alleged that Mr. Santa Maria was kicked and punched, sustained various injuries and was denied medical attention. (*Id.*) I screened the complaint, dismissing all claims related to the Elizabeth Police Department (a department of City government which is not an independent entity that can be sued), while permitting all claims to proceed against the two officers and the City. (ECF Nos. 2 & 3.)

In January of 2016, the defendants filed separate answers to the complaint. (ECF Nos. 17–19.) The Honorable James B. Clark, U.S.M.J., issued a pretrial scheduling order directing the parties to complete all discovery by October 31, 2016, (ECF No. 24), and file all dispositive motions by March 23, 2018. (ECF No. 51.) On June 2, 2016, counsel appeared for Mr. Santa Maria, who had formerly appeared *pro se*. (ECF No. 30.) On March 23, 2018, the defendants filed separate motions for summary judgment. (ECF Nos. 52–55.) Defendants Martinez and Delaprida both argue that they are entitled to qualified immunity and that Mr. Santa Maria has not shown that they used in excessive force. (ECF Nos. 52 & 53.) Martinez and Delaprida also assert that Mr. Santa Maria is not entitled to punitive damages. (*Id.*) On April 23, 2018, Mr. Santa Maria filed a counseled brief in opposition to the officers' summary judgment motions. (ECF No. 55.)

2

## B. Factual Background[1]

This case centers around the aftermath of a police chase involving Mr. Santa Maria. Santa Maria is six feet three inches tall, and weighed about 330 pounds at the time of the incident. (Plaintiff's Statement of Material Facts ("PSMF"), ECF No. 55, p. 13 ¶ 1.) On April 8, 2014, he was in a vacant house in Elizabeth. (Pl.'s Dep., ECF No. 52-6 at p. 20.) He exited from the house, got into a car, and began driving. (*Id.*) Sometime later, Mr. Santa Maria noticed a marked police car, with its lights and sirens activated, driving behind him. (*Id.* at p. 22.) In fact, two police vehicles were following Mr. Santa Maria. One was a marked police vehicle with Detectives Idrovo and Valladares inside. (*See* Martinez Statement of Material Facts ("MSMF"), ECF No. 52-4 at ¶ 22.) The second vehicle was unmarked, with Detectives Martinez and Delaprida who were wearing plainclothes. (*Id.*) Detective Martinez is six feet two inches tall and weighed 240 pounds at the time of the incident. (*Id.*) Detective Delaprida is six feet tall and weighed 240 pounds at the time of the incident. (*Id.*) Mr. Santa Maria did not pull over because he was driving what he knew to be a stolen vehicle and he did not have a driver's license with him. (Pl.'s Dep., at p. 22.) Mr. Santa Maria began to accelerate, reaching at most 50 miles per hour, sideswiping several vehicles with drivers inside. (*Id.* at p. 22–23.) The marked police vehicle passed the unmarked vehicle, and at a certain point the unmarked vehicle lost sight of Mr. Santa Maria's car. (MSMF ¶ 22) Mr. Santa Maria sideswiped approximately ten vehicles during the chase. (*Id.*) He testified at his deposition that his vehicle came to a halt because of traffic and "there was nowhere else to go." (Pl.'s Dep., at p. 22.) Mr. Santa Maria then heard an

---

[1]   In recounting the factual background, this Court footnotes certain instances where the facts are disputed by the parties. In light of the summary judgment standard, however, this Court must view those disputed facts in the light most favorable to Mr. Santa Maria.

3

officer yell at him to exit the vehicle. (*Id.* at p. 24.) He described that officer as Hispanic, medium height, five eight or five nine, and average build, dressed in plain clothes. (*Id.*) He then testified that he tried to exit from his vehicle through the driver's open window, because he could not open the door as a result of the crash.[2] (*Id.*) As he struggled to get out of the window, the two officers were yelling at him to get out of his vehicle. (*Id.*) Mr. Santa Maria described the second officer as Hispanic, short and of average build, in plain clothes. (*Id.*) Mr. Santa Maria stated that the officers pulled him out of the window by grabbing his shoulders and arms.[3] (*Id.* at p. 25.) He explained that he landed face-first on the ground and was handcuffed immediately. (*Id.*) While he was on the ground, with an officer on each side of him, the two officers allegedly shouted profanities at him, kicked him in the face, head and body, and stomped on his cuffed hands. (*Id.* at p. 26.) The beatings lasted approximately two minutes. (*Id.* at p. 25.) Mr. Santa Maria was placed in the back of the police car of Detectives Idrovo and Valladares and was transported to police headquarters. (MSMF ¶ 22.) Mr. Santa Maria testified at his deposition that he was brought to the Elizabeth Police Department by different officers from those who hit him. (*Id.* at p. 26–27.) Mr. Santa Maria further testified in his deposition that the two officers who hit him were the officers in the unmarked car. (PSMF ¶¶ 12–14.)

---

[2] Defendant Martinez testified during his deposition that Detectives Idrovo and Valladares arrived on the scene first and were yelling at Mr. Santa Maria to get out of his vehicle. (Martinez Dep., ECF No. 52-6 at p. 66.) He stated that Mr. Santa Maria refused to comply and was "clutching onto the steering wheel". (*Id.*)

[3] Defendants contend that Officer Delaprida went to the passenger side of the vehicle and punched Mr. Santa Maria one time in the face to subdue him. (Martinez Dep., ECF No. 52-6 at p. 67, 69.) Then Martinez, Idrovo and Valladares, who were standing at the driver's side of the vehicle, removed Mr. Santa Maria from the vehicle, handcuffed him and placed him in the back of the marked police vehicle. (*Id.* at p. 72, 74–75.) They state no other physical force were administered. (*Id.* at p. 74.)

Mr. Santa Maria's medical records show that he was treated on April 9, 2014. (*See* Trinitas Medical Records, ECF No. 52-6 at 3.) The notes indicate that Mr. Santa Maria complained of pain to his left ribs and right hand. (*Id.*) No bruising was noted to his ribs, slight swelling was noted on his right hand, and an abrasion was noted to his left temple and nose. (*Id.*) The medical records also show that imaging was taken of Mr. Santa Maria and no fractures or dislocations were identified. (*Id.* at 7.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 permits a court to award a party summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if supported by evidence such that a reasonable jury could return a verdict in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 251–52 (1986); *Kaucher v. County of Bucks*, 455 F.3d 418, 422–23 (3d Cir. 2006). A fact is material if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See Anderson*, 477 U.S. at 248; *Kaucher*, 455 F.3d at 423. In determining whether a genuine dispute of material fact exists, the Court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-movant]." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

A movant for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-movant then carries the burden to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). Moreover, the non-movant may not rest upon the mere allegations or denials of the pleadings. *Id.* at 324. The non-movant must "do more

than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. A mere "scintilla of evidence . . . will be insufficient." *Anderson*, 477 U.S. at 252.

## III. ANALYSIS

Mr. Santa Maria contends that Detectives Martinez and Delaprida used excessive force against him in violation of his constitutional rights. Detectives Martinez and Delaprida respond that Mr. Santa Maria's general description of the officers who beat him does not match their descriptions, and, in any event, they are entitled to qualified immunity.

### A. Improper Defendants

The Defendant Detectives argue that Mr. Santa Maria's deposition testimony, describing the officers who beat him as Hispanic and of average build and average height, does not match their descriptions. Viewing the facts in the light most favorable to Mr. Santa Maria, I find he has raised sufficient facts to avoid summary judgment.

It is well established that "[i]n order to prevail on a § 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his constitutional rights." *Kaucher*, 455 F.3d at 431 n.7 (citation and quotation marks omitted); *see also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing") (citation and quotation marks omitted). Here, Mr. Santa Maria has sufficiently made this showing. He testified during his deposition that it was the two undercover officers, in their unmarked vehicle, who chased him, handcuffed him, and came in direct physical contact with him. (Pl. Dep., ECF No. 55-2 at p. 19, 34.) The Defendants do not dispute that they were the officers driving an unmarked vehicle and were wearing plain clothes. (*See* Martinez Dep., ECF No. 55-4 at p. 17.) Mr. Santa Maria

6

also submitted a certification in which he stated that he was provided with photos of both Detective Martinez and Delaprida and positively identified them as the officers who assaulted him. (*See* Pl. Certif., ECF No. 55-3 at p. 2–3.) Furthermore, Detective Delaprida admitted to punching Mr. Santa Maria in the face to subdue him. (Delaprida Statement of Material Facts ("DSMF"), ECF No. 53-13 ¶ 25.)

Defendants point to two instances in Mr. Santa Maria's deposition testimony in which he described the officers who yelled at him as Hispanic, of average height and average weight. Defendants argue that they are not of average height or weight; Detective Martinez was "six foot two" and about 240 pounds at the time of the incident and Detective Delaprida was six feet and about 250 pounds at the time of the incident. Mr. Santa Maria responds that he weighed over 330 pounds at the time of the incident and that, to him, the Defendants were of average weight. Certainly the definition of what constitutes "average" weight and "average" height is a fact that lends itself to dispute. But at any rate, even a mistaken physical description would go only to the weight of the testimony and would not defeat summary judgment. Mr. Santa Maria positively identified these specific officers, however imperfectly, and there is corroborating evidence. Summary judgment is denied.

## B. Qualified Immunity

Defendants Martinez and Delaprida also contend that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When properly applied, qualified immunity protects "all but the plainly incompetent or those who

knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To overcome qualified immunity, a plaintiff must plead facts sufficient to show that: (1) the official violated a statutory or constitutional right; and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232; *Mammaro v. New Jersey Div. of Child Prot. & Permanency*, 814 F.3d 164, 168-69 (3d Cir. 2016). A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citation omitted). The burden of proving the affirmative defense of qualified immunity rests on the party seeking to invoke it. *See Thomas v. Independence Twp.*, 463 F.3d 285, 292 (3d Cir. 2006).

1. <u>Qualified Immunity and Excessive Force</u>

The first step in analyzing qualified immunity is to identify whether the facts of this case, taken in the light most favorable to Mr. Santa Maria, show that Detectives Martinez and Delaprida violated a specific constitutional right belonging to him. *Santini v. Fuentes*, 795 F.3d 410, 417 (2015). The Supreme Court has held that all claims alleging excessive force in the context of an arrest, investigatory stop, or seizure must be "analyzed under the Fourth Amendment and its 'reasonableness' standard. . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004). To prevail on a Fourth Amendment excessive force claim, "a plaintiff must show that a seizure occurred and that it was unreasonable under the circumstances." *Lamont v. New Jersey*, 637 F.3d 177, 182–83 (3d Cir. 2011). A seizure occurs "[w]henever an officer restrains the freedom of a person to walk away. . . ." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). Here, because there is no dispute that a

seizure occurred when the officers arrested Mr. Santa Maria, the critical question for this Court is whether the officers employed an unreasonable amount of force in doing so.

To determine reasonableness in excessive force cases, the Third Circuit asks, "whether under the totality of the circumstances, 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Graham*, 490 U.S. at 397); *see also Santini*, 795 F.3d at 417 ("[W]e employ a 'totality of the circumstances' approach for evaluating objective reasonableness."). In assessing objective reasonableness, courts balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted). While the objective reasonableness inquiry is individualized and fact specific, the Supreme Court has provided three general factors to guide the Court's inquiry: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) whether the suspect "is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396; *see Garner*, 471 U.S. at 8-9; *Santini*, 795 F.3d at 417. "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). While some courts consider "only the facts and circumstances at the precise moment that excessive force is applied," courts within the Third Circuit take into account "all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force." *Rivas*, 365 F.3d at 198.

9

The objective reasonableness of a particular use of force is evaluated from "the perspective of the officer at the time of the incident and not with the benefit of hindsight." *Santini*, 795 F.3d at 417; *see Graham*, 490 U.S. at 396 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). The "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. "The reasonableness of the use of force is normally an issue for the jury." *Rivas*, 365 F.3d at 198.

Mr. Santa Maria and Defendants have divergent accounts of what occurred during the incident. Mr. Santa Maria claims that while his vehicle was immobilized and he was trying to get out of the car through the window, the officers grabbed him and threw him face-down on the ground. After he was handcuffed, the officers began hitting, kicking and stomping on him for approximately two minutes.

In contrast, Defendants contend that Mr. Santa Maria—after hitting ten cars during a high-speed chase, running red lights, and crashing his vehicle—refused to get out of his vehicle. As they tell it, Mr. Santa Maria had his hands on the vehicle's steering wheel and looked as though he intended to restart the vehicle. While Detective Delaprida admits to punching Mr. Santa Maria in the face to subdue him, both officers deny administering any additional blows as claimed by Santa Maria.

The Supreme Court has addressed the use of excessive force in the context of a high-speed chase, albeit in the context of deadly force. In *Mullenix v. Luna*, 136 S. Ct. 305 (2015), the Supreme Court found that an officer who shot and killed a motorist involved in a high-speed

chase was entitled to qualified immunity, explaining that "excessive force cases involving car chases reveal the hazy legal backdrop against which [the officer] acted." 136 S. Ct. at 309. *Mullenix* and similar Supreme Court cases, however, involved the use of deadly force to stop a dangerous high speed chase that was *ongoing*. In *Mullenix*, for example, the Supreme Court observed that it had "never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment". *Id.* at 310. Similarly in *Plumhoff v. Rickard*, 134 S. Ct. 2012, (2014), the officer fired shots at the driver during the chase. There, the car "collided with a police car and came temporarily to a near standstill . . .[but l]ess than three seconds later, [the driver] resumed maneuvering his car." *Id.* at 2021; *see also Scott v. Harris*, 550 U.S. 372, 386 (2007) (finding officer entitled to qualified immunity where "police officer[] *attempt[ed] to terminate* a dangerous high-speed car chase that threaten[ed] the lives of innocent bystanders") (emphasis added).

The status of the chase is a key fact in dispute here. Mr. Santa Maria stated at his deposition that the pursuit of his vehicle had ended, and it was only after he was handcuffed, with his face and stomach on the ground, that he was beaten by the officers. The officers, however, state that he had not submitted to authority, was refusing to get out of the car, and indeed appeared to be threatening to take off again.

A fairly typical "high speed chase" case applying the Supreme Court case law is the recent Third Circuit case of *Bland v. City of Newark*, No. 17-2228, 2018 WL 3863378 (3d Cir. Aug. 15, 2018). *Bland* reversed an order denying summary judgment to police officers who used deadly force during a high speed chase. As the police pursued a carjacked vehicle, it ran numerous red lights, reached speeds of 100 miles per hour and hit numerous vehicles, at one point becoming entangled with the police vehicles. *Id.* at *1–2. Then, however, the driver failed

11

to surrender, but "revvedthe . . . engine, spun its tires, and tried to get the vehicle to accelerate." *Id.* at *2. As the vehicle hit a scaffolding, the officers were firing at the driver, Bland. *Id.* Bland stated that he then tried to exit through the vehicle's window, as the officers continued to fire their weapons. *Id.* The officers testified that at the time they shot at the vehicle, it was moving or at least the engine was revving, indicating it was still capable of flight. *Id.*

The Third Circuit held that the officers were entitled to qualified immunity. Bland, the Court explained, disobeyed traffic lights, drove at high speeds, put pedestrians and motorists at risk, harmed at least one innocent civilian, threatened to kill officers, and showed no signs of surrendering. In addition, the officers reasonably believed he was armed. *Id* at *5. Thus, the Court held that, even if it accepting Bland's contentions that the officers fired at him at a time when the vehicle was immobile and they could see his hands, they were entitled to qualified immunity. *Id.*

Our case, however, is distinguishable. First, unlike the officers in *Bland*, these officers had no reasonable belief that Mr. Santa Maria was armed. Second, Mr. Santa Maria has testified to alleged beatings by the officers *after* he was already out of his vehicle, handcuffed and on the ground. Where facts are disputed, and I must draw inferences in Santa Maria's favor, I cannot say that this case law requires a finding of qualified immunity.

I therefore apply the *Graham* factors to determine, as an original matter, whether it was not objectively reasonable for Detectives Martinez and Delaprida to administer blows to Mr. Santa Maria when he was already handcuffed and face-down on the ground, with two officers on his sides. If that version of the facts—Mr. Santa Maria's version—is accepted, a reasonable jury could conclude that the officers' blows to Mr. Santa Maria were not "objectively reasonable" under the circumstances.

The first *Graham* factor is the severity of the crime. The undisputed facts demonstrate that Mr. Santa Maria was driving a stolen vehicle, he accelerated as fast as 50 miles per hour, he sideswiped a number of vehicles with drivers inside and he was ultimately charged with Eluding and Receiving Stolen Property. (*See* J. of Conviction, ECF No. 52-5 at p. 24.) Even viewing this evidence in the light most favorable to Mr. Santa Maria, a reasonable jury could conclude that this factor weighs against Mr. Santa Maria.

That brings us to the second *Graham* factor—whether Mr. Santa Maria posed an immediate threat to the officers. By driving a stolen vehicle at a high speed, Mr. Santa Maria certainly initially posed an immediate threat to the safety of the officers. Once he was handcuffed and face-down on the ground, however, the threat had dissipated. A reasonable jury could conclude that, at that point, Mr. Santa Maria did not pose an imminent threat to the officers or the public, and that their application of force was not reasonable.

The third *Graham* factor—whether Mr. Santa Maria was actively resisting arrest or attempting to evade arrest by flight—could similarly weigh in Mr. Santa Maria's favor, if his version of the facts is accepted. At the time the officers administered the blows, Mr. Santa Maria was allegedly already handcuffed on the ground.

Under the facts as alleged by Mr. Santa Maria, then, a reasonable jury could conclude that the officers violated his Fourth Amendment right to be free of force that was not "objectively reasonable" under these circumstances. To find qualified immunity, a fact finder would have to weigh conflicting evidence and resolve the facts in the officers' favor, which cannot properly be done on summary judgment.

Accordingly, I find that Defendants Martinez and Delaprida have failed to satisfy the first step of the qualified immunity analysis.

2. Clearly Established Right

Having determined that a reasonable jury could conclude that the officers' conduct was not "objectively reasonable," I turn to whether it was "clearly established" that hitting and kicking Mr. Santa Maria while he was handcuffed and on the ground violated the Fourth Amendment. With respect to the second step of a qualified immunity analysis, this Court must "identify the right at issue and determine if that right was clearly established at the time of the officer's action." *Estep v. Mackey*, 639 F. App'x 870, 873 (3d Cir. 2016). A right is clearly established where, at the time of the challenged conduct, the contours of the right are "sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (alteration original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). In other words, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.25

While a case directly on point is not required, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001). "Such precedent must come either from the Supreme Court or a 'robust consensus of cases of persuasive authority in the Court of Appeals.'" *In Re: J & S Properties, LLC*, No. 16–3366, 2017 WL 4294065, at *4 (3d Cir. Sept. 28, 2017) (quoting *Mammaro*, 814 F.3d 169).

In determining whether a constitutional right has been clearly established, the Court must "define the right allegedly violated at the appropriate level of specificity." *Sharp*, 669 F.3d at 159 (citation omitted). Both the Supreme Court and the Third Circuit have repeatedly instructed

14

courts "not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742 (citations omitted). "Rather, the right at issue must be framed 'in a more particularized, and hence more relevant, sense, in light of the case's specific context, not as a broad general proposition.'" *Mackey*, 639 F. App'x at 873 (quoting *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 638 (3d Cir. 2015)). Within the context of excessive force claims specifically, both the Supreme Court and Third Circuit have emphasized the importance of defining with particularity the clearly established law. *See Pauly*, 137 S. Ct. at 552; *Santini*, 795 F.3d at 417 (observing that the qualified immunity analysis "has more particularized requirements in an excessive force case").

I define the clearly established right as follows: Mr. Santa Maria had the right to be free from being hit and kicked by officers, even after he was involved in a high-speed chase, so long as the threat he posed is no longer imminent and he was not resisting arrest.

Now it is true, of course, that qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). In recognition of that principle, the Supreme Court has emphasized that, whenever possible, courts should rule on qualified immunity "early in the proceedings so that the costs and expenses of trial are avoided." *Saucier*, 533 U.S. at 200. Nonetheless, the Third Circuit has recognized that "the imperative to decide qualified immunity issues early in the litigation is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right." *Curley*, 298 F.3d at 278 (citation omitted). Thus, "a decision on qualified immunity [is] premature when there are unresolved disputes of historical fact relevant to the immunity analysis." *Id.* at 278.

*Whether* Mr. Santa Maria in fact was no longer threatening, resisting, or attempting to flee is very much in dispute. Detective Martinez testified during his deposition that the two other officers on the scene, Detectives Idrovo and Valladares attempted to get Mr. Santa Maria out of his vehicle, but Mr. Santa Maria resisted by grabbing the steering wheel. (*See* Martinez Dep., ECF No. 52-6 at p. 65–66.) Detective Delaprida testified during his deposition that he observed Mr. Santa Maria with both hands on the steering wheel, "move his right hand, [and] fidget with something". (Delaprida Dep., ECF No. 52-6 at p. 91.) Under these circumstances, the force used against Mr. Santa Maria may have been reasonable, and the conduct, whatever it was, would likely not be clearly established as excessive force.

If, however, the factfinder concludes that Mr. Santa Maria was hit, kicked and stomped on after he was already handcuffed, then the officers' actions would have been unreasonable, considering that Mr. Santa Maria no longer posed an imminent threat. Pre-existing case law in this Circuit, and others, makes clear that law enforcement officers must limit their use of force where a suspect is immobilized and neither resisting arrest nor attempting to flee. *See Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) ("[A]t the time of the incident in 2001, it was established that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued."); *Gulley v. Elizabeth City Police Dep't*, 340 F. App'x 108, 110 (3d Cir. 2009) (finding that it was clearly established that "beating a suspect on the face and head, who is lying down and not resisting arrest, would constitute excessive force in violation of the Fourth Amendment."); *Green v. New Jersey State Police*, 246 F. App'x 158, 163 (3d Cir. 2007) (holding it was clearly established that "a reasonable officer would know, based on the *Graham* and *Sharrar* factors, that it would be excessive to grab and choke an arrestee's throat, especially before using lesser force; to hit him on the head twice with a flashlight; and to kick him when he

16

is already restrained and on the ground."); *Morrison v. Bd. Of Trustees Of Green Twp.*, 583 F.3d 394, 407 (6th Cir. 2009) ("Gratuitous violence inflicted upon an incapacitated detainee constitutes an excessive use of force, even when the injuries suffered are not substantial.") (citations and quotation marks omitted).

In sum, viewing the facts in the light most favorable to Mr. Santa Maria, I find that Detectives Martinez and Delaprida have not satisfied their burden of proving the defense of qualified immunity, because critical facts remain in dispute.[4] Accordingly, their summary judgment motions are denied.

## C. Punitive Damages

Detectives Martinez and Delaprida also maintain that Mr. Santa Maria is not entitled to punitive damages. Under § 1983, a defendant whose conduct demonstrates a reckless or callous indifference toward others' rights may be liable for punitive damages. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) (stating that a jury may award punitive damages when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others"); *Savarese v. Agriss*, 883 F.2d 1194, 1204 (3d Cir. 1989) (holding that a defendant's conduct must be at minimum reckless or callous to impose punitive damages under § 1983). The Third Circuit "has explained that the term 'reckless indifference' refers to the defendant's knowledge that he 'may be acting in violation of federal law.'" *Whittaker v. Fayette Cty.*, 65 F. App'x 387, 393 (3d Cir. 2003) (quoting *Alexander v. Riga*, 208 F.3d 419, 431 (3d Cir. 2000) ). If Mr. Santa Maria's version of the incident is believed

---

[4] At the same time, I cannot conclude at this stage of the proceedings that the Detectives would *not* be able to claim immunity once those factual disputes are resolved. Therefore, Defendants Martinez and Delaprida may renew their request for qualified immunity if and as appropriate.

17

by a jury, then it is possible for the jury to conclude that Detectives Martinez and Delaprida were motivated by an evil intent or motive, when they hit, kicked and stomped on Mr. Santa Maria after he was handcuffed. Whether the punitive damages issue should be submitted to the jury is a question that can be resolved only in the context of the evidence at trial. For now, however, the motion for summary judgment on this issue must be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that there are genuine issues of material fact as to whether Defendants Martinez and Delaprida engaged in excessive force in arresting Mr. Santa Maria. Accordingly, those officers' motions for summary judgment, both on the merits and as to punitive damages, are denied as to the excessive force claims. The officers' motions are granted on consent, however, as to claims of intentional infliction of emotional distress and the denial of medical treatment, to the extent such claims may have been intended. The motion of The City of Elizabeth (N.J.) for summary judgment is granted. An appropriate order follows.

Dated: August 28, 2018

KEVIN MCNULTY
United States District Judge